IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00323-CR

 

Ivan Jose Manzano,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 54th District Court

McLennan County, Texas

Trial Court No. 2003-876-C

 



O p i n i o n



 








          Ivan Manzano was charged in a two-count
indictment with felony offenses of aggravated sexual assault against a single
victim.  He pled not-guilty, but a jury convicted him on both counts and
assessed ten years in prison for each.  The trial judge ordered that the
sentences run consecutively, and Manzano appealed.

The Issues

          In four issues, he asserts error in
the admission of statements by the victim to a doctor, error in failing to
grant a mistrial after the State invited the jury to speculate about the
contents of a videotape that had been excluded from the evidence, and two
issues concerning the “stacking” of the sentences.  Finding no error, we will
affirm the judgment.

The Facts Briefly

          Manzano lived next door to the
victim’s grandmother, and the two families were friends.  Manzano’s daughter
would babysit for the victim’s mother, and sometimes those children would stay
with him.  The victim’s aunt overheard a conversation between her daughter and
the victim, then age 6, in which the victim said, “Ivan does sex.”  The aunt
told the victim’s mother, who confronted the victim.  As a result, Manzano was
charged.

The victim testified about the physical acts,
and a doctor who conducted a medical exam testified that the victim told her,
“Ivan did s-e-x.” 

Further recitation of the evidence, at either
the guilt-innocence stage or the punishment stage, is not relevant to our
decision.

Evidentiary Rule 803(4) and Child Testimony

          Manzano’s third issue contests the
trial court’s ruling that the statements made by the victim to the doctor were
admissible.  The admissibility of evidence lies within the discretion of the
trial judge.  E.g., Ellis v.
State, 99 S.W.3d 783, 788 (Tex.
App.—Houston [1st Dist.] 2003, pet. ref’d).  We must uphold the trial court's
ruling if it was within the zone of reasonable disagreement.  Id.

Acknowledging that statements made for the
purpose of assisting in a medical diagnosis are admissible, Manzano says that
the statements made in this case should not have been admitted because they did
not achieve the reasons for admitting such statements under Rule 803(4) of the
Rules of Evidence.  Tex. R. Evid.
803(4).  Decisions under the rule, he says, do not recognize that a lack of
maturity causes children to fail to associate providing accurate information
with the role the medical provider is occupying, i.e., gathering
information to make a diagnosis.  He also says that exams such as the one
conducted here are more for the purpose of investigation than providing
treatment.[1] 
He stresses the language in Rule 803(4) limiting admissibility to statements
made “insofar as reasonably pertinent to diagnosis or treatment.”  Id.

Here, he contends, there was nothing to diagnose
or treat.  The victim was not complaining of pain or discomfort and manifested
no outward problems.  The doctor was the last person she saw in the
investigative process—after the police and an advocacy counselor.  Thus, he
says the doctor’s testimony provided nothing more than an “aura of authority”
for the victim’s testimony.

          The State says that courts in Texas have routinely admitted such statements because “treatment of child abuse must begin
with removing the child from the abusive setting.”  Although nothing in this
record suggests that the exam in question was conducted to remove the child
from an abusive setting, we find no distinction in the cases that would remove
statements by a child from the effect of Rule 803(4).  Beheler v. State,
3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref’d) (reviewing court must
look to the record to see if it supports a conclusion that the young child
understood why she needed to be honest when speaking to the caregiver); Molina
v. State, 971 S.W.2d 676, 683-84 (Tex. App.—Houston [14th Dist.] 1998, pet.
ref’d) (evidence of the complainant's understanding of the need to tell the
truth).  Statements are admitted using Rule 803(4) when the witness satisfies
the Legislature’s definition of a physician or health care provider as defined
in the medical malpractice statute.  See Gregory v. State, 56 S.W.3d 164,
183 (Tex. App.—Houston [14th Dist.] 2001, pet. dism’d) (registered nurse permitted
to testify about statements made and symptoms of child abuse victim) (“Texas
courts have allowed non-physicians to testify under the medical diagnosis and
treatment exception to hearsay.”); Torres v. State, 807 S.W.2d 884,
886-87 (Tex. App.—Corpus Christi 1991, pet. ref’d) (emergency room nurse testified
under Rule 803(4) about victim’s answers to questions asked during collection
of samples for “rape kit”); Fleming v. State, 819 S.W.2d 237, 247 (Tex.
App.—Austin 1991, pet. ref’d) (physician and mental health therapist testified
about victim’s statements).  Although the trial judge made no specific inquiry
to determine whether the child appreciated the need to be truthful, the record is
sufficient to support this conclusion.  Molina, 971 S.W.2d at 684
(citing Fleming, 819 S.W.2d at 247).  Further, whether the statements at
issue were “reasonably pertinent to the diagnosis or treatment” of the victim
was a question for the trial judge to answer prior to admitting the evidence.  Tex. R. Evid. 803(4).  Finding that his
determination was within the “zone of reasonable disagreement,” we overrule the
issue.  Ellis, 99 S.W.3d at 788.

Evidence Not Admitted – Final Argument

          The victim was taken to the Advocacy Center where she was interviewed.  A videotape of the interview was made, and the
State offered it into evidence at trial.  On Manzano’s objection, the trial
court excluded it.  Nevertheless, in final argument the State referred to the videotape:

Let’s talk about the interview with Brenda
Penland.  Why did we call Brenda to come up here and testify again?  Because we
had to clear it up.  She had to tell you she reviewed the video and, yes, [the
victim] brought it up first.  She brought up Ivan and sex before Brenda asked
her about it.  And don’t you know if that interview would have been
impermissively suggestive you would have seen it, because [defense counsel],
wild horses couldn’t have kept that video out.

 

Sustaining Manzano’s objection, the trial court
instructed the jury to disregard the argument but denied a motion for a
mistrial.

We have written recently about reviewing the
denial of a motion for mistrial.  Perez v. State, 2006 WL 133575, at
*1-3 (Tex. App.—Waco January 18, 2006, no pet. h.).

A motion for mistrial is appropriate for “highly
prejudicial and incurable errors.”  We review the denial of a motion for
mistrial under an abuse of discretion standard.  See Simpson v. State,
119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (quoting Wood v. State, 18
S.W.3d 642, 648 (Tex. Crim. App. 2000)); Ladd v. State, 3 S.W.3d 547,
567 (Tex. Crim. App. 1999).

[T]he question of whether a mistrial should have
been granted involves most, if not all, of the same considerations that attend
a harm analysis.  A mistrial is the trial court’s remedy for improper conduct
that is “so prejudicial that expenditure of further time and expense would be
wasteful and futile.”  In effect, the trial court conducts an appellate
function:  determining whether improper conduct is so harmful that the case
must be redone.  Of course, the harm analysis is conducted in light of the
trial court’s curative instruction.  Only in extreme circumstances, where the
prejudice is incurable, will a mistrial be required.

 

Hawkins
v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  Thus, the
appropriate test for evaluating whether the trial court abused its discretion
in overruling a motion for mistrial is a tailored version of the test
originally set out in Mosley v. State, 983 S.W.2d 249, 259-60 (Tex.
Crim. App. 1998), a harm analysis case.  See Hawkins, 135 S.W.3d
at 77 (“We therefore agree that the Mosley factors should be used to
evaluate whether the trial court abused its discretion in denying a mistrial
for improper argument, at least in cases like this one, in which constitutional
rights are not implicated.”).  The Mosley factors that we consider in
determining whether the trial court abused its discretion in denying a mistrial
are: (1) the severity of the misconduct (the magnitude of the prejudicial
effect); (2) measures adopted to cure the misconduct (the efficacy of any
cautionary instruction by the judge); and (3) the certainty of conviction
absent the misconduct.  Mosley, 983 S.W.2d at 259.

In final argument,
it is improper to refer to evidence that the trial court excluded.  Applying the Mosley factors, we first
observe that the prosecutor’s conduct appears to be a response to counsel’s
argument about a “forensic interview” and about Penland’s testimony when
recalled that she had viewed the videotape and verified the sequence of
events.  The mistake was not repeated, and we do not find that the statement was
calculated to inflame the minds of the jury.  See Perez, 2006 WL 133575,
at *2.  In most instances, an instruction to disregard will cure the
prejudicial effect.  See id.  The improper statement about the videotape
was followed by an instruction to disregard from the trial court, which Manzano
concedes is generally effective and which we presume was complied with by the
jury.  An instruction to disregard is presumptively inadequate only in the most
blatant cases; only offensive or flagrant improper conduct warrants reversal
when there has been an instruction to disregard, and, in the case at bar, the
improper statement was not so flagrant that the instruction to disregard was
ineffective.  See id.  Finally, considering all the evidence, the
certainty of conviction—absent the improper statement—was high, considering the
direct testimony of the victim and the medical testimony.  See id.  Although
this is a more difficult decision than in Perez, we cannot say that the
trial court abused its discretion in denying the mistrial motion; thus we
overrule Manzano’s issue and turn to the issues regarding the sentence.

Due Process – Failure to Instruct Jury that
Court Might Cumulate

          Manzano’s
first issue asserts that the jury should have been instructed that the court
might cumulate the sentences for the two offenses.  Although sentences for
multiple offenses charged in the same indictment must generally run
concurrently, he acknowledges that the legislature has provided several
exceptions, including one for sexual assault of a child.  Tex. Pen. Code Ann. § 3.03(a), (b) (Vernon Supp. 2005).  Because the trial court has discretion about whether to cumulate and
because the jury in this instance inquired about the matter,[2]
Manzano contends that due process requires that the jury be given information
to make an informed decision about what sentences to assess.  He acknowledges
that there are no published decisions addressing this issue, but suggests that such
a requirement would be a logical extension of the holding in California v.
Ramos, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983).  The State
cites Andrews v. State and Peterson v. State as contrary authority. 
Andrews v. State, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005) (trial
counsel ineffective for failure to object to prosecutor's misstatement of the
law regarding whether the appellant's sentences could be stacked, even though
he knew that the State had filed a motion to cumulate the sentences); Peterson
v. State, No. 01-02-00603-CR, 2003 WL 22681607 (Tex. App.—Houston [1st
Dist.] 2003, pet. ref’d) (not designated for publication) (rejecting argument
that Apprendi v. New Jersey, requires jury to determine whether to
cumulate sentences).

          Although
the cases cited by the State do not speak directly to the issue Manzano
asserts, we do not agree with his assertion.  The Penal Code and Code of
Criminal Procedure assign to the trial judge the responsibility for determining
whether to cumulate sentences or allow them to run concurrently, when there is
an option.  Tex. Code Crim. Proc. Ann.
art. 42.08(a) (Vernon Pamphlet 2005); Tex.
Pen. Code Ann. § 3.03(a), (b).  No factual determinations are required,[3]
so there is nothing for a jury to determine.  We hold that due process does not
require that the jury be given information about the trial court’s ability to
cumulate sentences or order them to run concurrently.  We overrule issue one.

Due Process and Right to Jury Trial – Cumulation
Not Submitted

          Manzano’s
second issue directly asserts that, because cumulation of his sentences results
in an increase in the “maximum sentence,” a logical extension of the
due-process and jury-trial requirements of Apprendi and the cases
following it would require submission of the question to the jury.  See United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); Blakely v.
Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); Apprendi
v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  The State again points to the fact that
the trial judge made no factual determination but simply exercised the discretion
given to him by statute.

We addressed this
issue in Marrow v. State and concluded that no Apprendi violation
occurred.  Marrow v. State, 169 S.W.3d 328, 330-31 (Tex. App.—Waco 2005,
pet. ref’d).  Neither due process nor the requirement of trial by jury requires
that the statutorily-assigned role of the trial judge in the determination of
whether to cumulate sentences or allow them to run concurrently be reassigned
to the jury.  We overrule Manzano’s second issue.

Conclusion

          Having
overruled Manzano’s four issues, we affirm the trial court’s judgment.

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

          (Chief
Justice Gray concurs only in the judgment and without a separate opinion.)

Affirmed

Opinion
delivered and filed February 15, 2006

Do
not publish

[CR25]









    [1]       He
cites three law review articles:  Child Sexual Abuse and Statements for the
Purpose of Medical Diagnosis or Treatment, 67 N.C.L. Rev. 257 (1989) (the age and mental maturity of the child may attenuate the
selfish interest of the declarant so profoundly as to virtually eliminate any
trustworthiness guarantee under the rationale of this exception); Hearsay
Exceptions in Child Abuse Cases: Have the Courts and Legislatures Really
Considered the Child?, 19 Whittier L. Rev. 559 (1998) (young children may not understand the physician's role, and
thus lack the motivation to tell the truth); and The Tug of War
Between the Confrontation Clause and Hearsay Exceptions in Child Sexual Abuse
Cases: Implications of White v. Illinois, 28 So. U. L. Rev. 93 (2001) (the reliability of all hearsay statements should be
examined on a case-by-case basis).





    [2]       The
court instructed the jury that they should not consider the matter.





    [3]       Subject
to certain procedural requirements, the discretion is apparently absolute.









he
evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument;
or (4) a plea for law enforcement. Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App.
1973). The invited-argument rule permits prosecutorial argument outside the record in response
to defense argument which goes outside the record; however, an argument may not be justified
by asserting "invited argument" when the reply strayed beyond the scope of the invitation. Bush
v. State, 773 S.W.2d 297, 301 (Tex. Crim. App. 1989).
      Based on all of the evidence in the record and considering that the evidence of fingerprints
was admitted through a witness called by Manning, we believe that the State's reply was a fair
response to Manning's argument. We overrule point five.
EXCLUDED EVIDENCE
      As Manning succinctly points out: "The primary issue in the trial was identity." After the
State rested, Manning called Kenneth (Kenny Boo) Giddens to testify. Outside of the presence of
the jury, Giddens testified about his criminal record, which included two burglaries of habitations
and an unauthorized use of a motor vehicle. Manning then attempted to offer testimony that
Giddens was in Madisonville on the day the Coles' home was burglarized and—knowing that
Giddens would deny committing the burglary for which Manning was on trial—impeach him by
showing that his physical characteristics were similar to those reported by Cole and that clothing
that he had worn was similar to that reported by Cole. 
      In front of the jury, Giddens was asked his name, allowed to stand with Manning beside him,
and allowed to stand in the back of the courtroom with Manning, with each looking over his right
shoulder. The court sustained the State's objection to further testimony by Giddens. Out of the
jury's presence, Giddens testified about his height and weight, where he worked, and where he
lived. He said that he did not commit the burglary of the Coles' residence and he did not know
whether Manning committed the burglary.
      The State made objections under both Rules 401-02 and Rule 403. Tex. R. Crim. Evid. 401,
402, 403. Evidence is relevant if it has any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than it would be
without the evidence. Id. 401. Rule 402 provides in part: "Evidence which is not relevant is
inadmissible." Id. 402. The determination of whether evidence is relevant to any issue in the case
lies within the discretion of the court. Id. 401; Johnson v. State, 698 S.W.2d 154, 160 (Tex.
Crim. App. 1985), cert. denied, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). The court
has no discretion, however, to admit evidence that it has determined is not relevant. Tex. R.
Crim. Evid. 402. 
      Rule 403 provides in part: "Although relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence." Id. 403.
      The determination of the admissibility of evidence is within the discretion of the court. Id.
104; Jackson v. State, 575 S.W.2d 567, 570 (Tex. Crim. App. [Panel Op.] 1979). Error does not
occur unless the court abuses that discretion. Werner v. State, 711 S.W.2d 639, 643 (Tex. Crim.
App. 1986).
      Manning points to the holding in Renfro v. State, 822 S.W.2d 757, 759 (Tex. App.—Houston
[14th Dist.] 1992, pet. ref'd). The Houston court said that, when identification is an important
issue at trial, "evidence showing that another person similar in appearance to the Defendant was
committing similar crimes at about the same time, and that one person mistakenly identified the
Defendant as such criminal, is admissible." Id. at 758 (citing Holt v. United States, 342 F.2d 163,
165 (5th Cir. 1965)). Although Manning's offer of proof differs from the Renfro facts, we believe
that his point is well taken. See id. at 759.
      The court allowed Giddens to tell the jury his name and to stand before them but would not
allow him to tell them how much he weighed, his height, where he worked, or where he lived. 
If the court had excluded the former testimony on the basis that it was not relevant or, if relevant,
its probative value was substantially outweighed by its tendency to mislead or confuse the jury,
then the latter testimony might have been excluded on the same basis. Tex. R. Crim. Evid. 401,
403. Having allowed Giddens to testify, however, we hold that the court abused its discretion in
excluding the additional evidence of his height, weight, employment, and residence, because that
evidence was just as relevant and no more likely to violate Rule 403 than the evidence that the
court allowed. Id. By the same token, the court properly excluded Giddens' testimony that he
did not commit the burglary on trial—evidence that had no tendency to make it more or less
probable that Manning did. Id. 401. Because that evidence was not relevant, it was not
admissible. Id. 402. We should not be heard to say that evidence of the type Manning offered
through Giddens will always be relevant and thus admissible. We say only that, having admitted
a part of his testimony, the court erred in excluding other testimony that was then relevant.
      Having determined that the court erred in failing to admit evidence offered by Manning, we
must now determine whether the error contributed to the conviction or punishment. Tex. R. App.
P. 81(b)(2). In making that determination, we will consider the following six factors:
      1.   the source of the error;
      2.   the nature of the error;
      3.   whether or to what extent the error was emphasized by the State;
      4.   the probable implications of the error;
      5.   how much weight a juror would probably place on the error; and
      6.   whether declaring the error harmless would encourage the State to repeat it with
impunity.
Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). We do not focus on the propriety
of the outcome of the trial, but on the integrity of the process that led to conviction and
punishment. Id.
      The source of the error was Manning's offer of evidence and the nature of the error was the
court's failure to apply the rules evenly. The State urged the court not to allow Giddens to testify
at all; thus, declaring the error harmless would not encourage the State to repeat it. When we turn
to the implications of the error and the weight a juror would probably place on the error, we find
that Manning argued:
Kenny Boo Giddens, similar height, similar weight, closer to the description. If you look
at the size and the weight that was described, he's actually closer to the description. Lives
in the neighborhood and he's closer. The only thing was they didn't see him on the street that
day. If they had seen him on the street that day, I wonder what he would have been wearing;
red shirt, blue cap possibly? The people that knew him said that's the kind of stuff he would
wear. That's consistent with him, too.
This argument was supported by the record because Denise Betts testified without objection that
it was not unusual for Manning to wear a red tee-shirt and a blue baseball cap while he was living
in Madisonville. Finding that the error was not emphasized by the State and considering the other
factors that we have described, we find beyond a reasonable doubt that the error did not contribute
to Manning's conviction or punishment. Id.; Tex. R. App. P. 81(b)(2). We overrule point one.
PEN PACKETS
      The seventh point complains of the admission during the punishment phase of two "pen
packets"—records of his prior convictions from the Texas Department of Criminal
Justice—Institutional Division—over Manning's objection that they were not properly self-authenticated. He candidly admits that the form he objects to, i.e., authentication by a deputy
clerk of a court in the name of the clerk, has been previously addressed and upheld. Soliz v. State,
794 S.W.2d 110, 114 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). He says, however, that
his objection is different. He asserts that the clerk cannot act "by" a deputy, whereas he says Soliz
held only that a deputy county clerk may perform all acts that the clerk could perform. We see
no distinction.
      Each exemplification contained a certification of the authority of Frank J. Robinson, the judge
of the county court of Walker County, made by James D. Patton, the clerk of the county court of
Walker County, "By: Judy Thompson Deputy." The form of these certificates is proper under
section 82.005 of the Local Government Code. Tex. Loc. Gov't Code Ann. § 82.005(c)
(Vernon 1988). We hold that the exhibits were properly authenticated. We overrule point seven.
PRIOR CONVICTION
      Manning's sixth point asserts that one of the prior convictions was void because he was denied
the effective assistance of counsel when there was no appeal. No notice of appeal or waiver of
appeal appears in the records of the prior conviction. The only evidence on the question is
Manning's testimony that his lawyer said she would appeal the conviction, but never did. The
State's brief points to Manning's burden of proof in collaterally attacking the prior conviction and
says that any error in admitting the conviction was rendered harmless by the admission of another
prior conviction. Either prior conviction, it asserts, justified the imposition of fifty years in
prison. We agree with the State's first contention; thus, we do not reach the second.
      The State proved Manning's prior conviction by introducing into evidence a certified copy of
a "pen packet." The burden then shifted to Manning to make an affirmative showing of any defect
in the judgment rendering the prior conviction void. Johnson v. State, 725 S.W.2d 245, 247 (Tex.
Crim. App. 1987). Whenever a collateral attack is lodged against (1) a prior conviction by habeas
corpus or (2) a prior conviction used to enhance punishment in an ongoing trial, a defendant
alleging ineffective assistance of counsel must prove by a preponderance of the evidence that the
prior conviction is void. Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex. Crim. App.), cert. denied,
——— U.S. ———, 114 S.Ct. 122, 126 L.Ed.2d 87 (1993); Galloway v. State, 578 S.W.2d 142,
143 (Tex. Crim. App. [Panel Op.] 1979). Because Manning had the burden of proof under a
preponderance-of-the-evidence standard, the sufficiency review on appeal is governed by Meraz
v. State, 785 S.W.2d 146, 154-55 (Tex. Crim. App. 1990):
[W]hen the courts of appeals are called upon to exercise their fact jurisdiction, that is,
examine whether appellant proved his affirmative defense or other fact issue where the law
has designated that the defendant has the burden of proof by a preponderance of evidence, the
correct standard of review is whether after considering all the evidence relevant to the issue
at hand, the judgment is so against the great weight and preponderance of the evidence so as
to be manifestly unjust.
(Emphasis added). Thus, our inquiry is directed to whether the court's implied finding that
Manning was not deprived of effective assistance of counsel is so against the great weight and
preponderance of the evidence as to be manifestly unjust.


 See id.
      Because the court found the enhancement paragraph "true," we must assume that it, sitting
as trier of fact, concluded that Manning failed to prove by a preponderance of the evidence that
counsel's actions violated the Strickland standards. Strickland v. Washington, 466 U.S. 668, 690,
104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Manning's burden on appeal is to establish that
implied findings on the Strickland standards are so against the great weight and preponderance of
the evidence as to be manifestly unjust. See Meraz, 785 S.W.2d at 155.
      Questions of admissibility of evidence are addressed to the court. Tex. R. Crim. Evid.
104(a). When a fact issue is tried to the court, the trial judge is the sole judge of the credibility
of the witnesses and may accept or reject all or any part of the testimony given by any witness. 
Johnson v. State, 571 S.W.2d 170, 173 (Tex. Crim. App. [Panel Op.] 1978). The judge was
entitled to disbelieve Manning's testimony about the appeal of his prior conviction and, in absence
of any other evidence, could have found that Manning did not discharge his burden of proving that
his prior conviction was void. Such a finding would not be so against the great weight and
preponderance of the evidence as to be manifestly unjust. Meraz, 785 S.W.2d at 155. We
overrule point six.
CONCLUSION
      Having overruled all of Manning's points, we affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed
Do not publish